BONIN, J.,
Concurs in Part and Dissents in Part with Written Reasons.
U concur in Sections I, II, III, IV, V, VI(b), and VI(c), but dissent from Sections VI(a) and VII.
Section VI(a):
Clearly BAHA as the property owner must bear part of the fault and assessment of damages.[1] However, I disagree with the majority’s apportionment of fault. Although the State had ample and extensive opportunities in the context of its lease with the building owner, BAHA, to protect its employees, it failed to exercise its right to make repairs and deduct the expense of the repairs from the lease payments, or to vacate the premises and terminate the lease upon sixty days written notice to BAHA.[2] Instead of taking a course of action either to remediate the problems or to abandon the site, the State actually entered into additional leases at this property and exposed additional employees.
Given its opportunities to remove its employees from the harmful and toxic environment of the BAHA premises, or to make corrections to that environment and pass the cost on to the building owner, the State was comparatively more at fault than the building owners and thus should bear a larger percentage of the | ^quantum. State employees worked at the Plaza Tower Office Building beginning in 1996[3] after the signing of the five-year lease. Complaints of deficiencies in the building began soon after the employees took occupancy and continued. The testimony of Kenneth La-nier, a State environmental health science manager, showed that he visited the office in November 1996 to meet with tenants complaining of the environment, suspecting asbestos or some other toxic element in the building’s atmosphere; and in August and October of 2001 he visited the building, performed environmental tests, and issued reports on his inspections. At trial he admitted that the complaints made in 2001 were similar to those made to him in 1996-7. Only after the State employees filed their class action suit for damages due to mold exposure did the State take steps to remove its employees from the building.
Comparing the fault of the State and BAHA pursuant to the factors set forth in Watson v. State Farm Fire & Cas. Ins. *1165 Co., 469 So.2d 967, 974 (La.1985), which are (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) whether the capacities of the actors were superior or inferior; (5) whether any extenuating circumstances required to act or to proceed without proper thought; and (6) the relationship between the actor’s conduct and the harm to the plaintiffs, I find that the State should bear a larger percentage of fault because of the longstanding and vociferous complaints of its employees working in the building, and of the availability of State employees who were trained or expert in environmental and scientific experience who could and should have done more, sooner. Moreover, the availability of repair personnel and materials would have allowed the State to exercise the repair option under its lease, forcing BAHA to ultimately pay for the repairs ^performed to the satisfaction of the State and its skilled employees to properly correct the environmental flaws (i.e., there would have been no economic incentive for applying “band-aid fixes”). Similarly, the State had legal staff to pursue reimbursement and protect all rights under the lease to make the State whole. Or, in the alternative, finding new office space in the city for relocation of the State agencies would have been a reasonable remedy under the lease.
According to the precepts of the Watson case, under these circumstances, I would assess sixty-five (65%) percent of the fault and liability against the State; and thirty-five (35%) percent of the fault and liability against BAHA.
Section VII:
The majority decision is correct that the State misperceives the October 13, 2004 judgment which did not provide for the payment of any court costs by the settling defendants to the plaintiffs. From the proceeds of the settlement payment to the 'plaintiffs, the October 13, 2004 judgment permitted the plaintiffs’ attorneys to be reimbursed the costs which they had advanced. The transaction is only on the plaintiffs’ side of the case and no party adverse to the plaintiffs has paid them court costs for which the State would be entitled to a credit.
However, there is no legal basis for the majority to substitute its appreciation of the court costs and reduce them, despite the trial court’s action, on the basis that any one or more of the costs might also be recoverable at some later time in another one of the consolidated cases known as Jolmson■ and Rhodes. Had the trial judge made such a reduction, I would have concluded that such was well within the proper exercise of her discretion. However, the trial judge was more familiar with the consolidated proceedings than we are. That a deposition may be usable in more than one case does not require or compel a reduction in this case. It may entitle the State in some subsequent case to a credit or it may preclude seeking Lpayment in any other consolidated case. But if the deposition was used in this case and an expert witness testified in this case, then the full amounts are taxable as costs in this case. La. C.C.P. art.1920, La. R.S. 13:4533, and La. R.S. 13:3666.
In conclusion, I concur in those portions of the majority decision which affirm the trial court’s judgment, I respectfully dissent from that portion of the decision which allocates the greater fault to the property owner and the lesser fault to the State, and I further respectfully dissent from the modification of the award of court costs by the trial court.

. BAHA leased only twenty percent of the building to the State. See Def. Exhibits 34, 35, 36, and 38.

. See Exhibit 2 of Rafizadeh deposition, Paragraphs 15, 16, and 22.

.After the initial lease, the State executed another five-year lease on April 5, 1998, for additional office space to place more DSS employees in the Plaza Tower.